# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

GREGORY WOMMACK,          )
                                            )
      Plaintiff,              )
                                            )
     vs.                    )      Case No. 4:11CV1487SNLJ
                                            )
SEAN BROWN and ERIC LOGGIA,    )
in their individual capacities,      )
                                            )
      Defendants.          )

## MEMORANDUM

Plaintiff has filed this § 1983 action alleging that his constitutional rights were violated when he was arrested without probable cause and tased while the defendants were subduing him in order to make the arrest and take him into custody.  He asserts a § 1983 claim for false arrest in violation of his Fourth and Fourteenth Amendment rights (Count I), and a § 1983 claim for excessive force in violation of his Fourth and Fourteenth Amendment rights (Count II).  This matter is before the Court on the defendants' motion for summary judgment [26], filed August 20, 2012.  Responsive pleadings have now all been filed and this matter is ripe for disposition. This cause of action is currently set on the Court's St. Louis trial docket of December 17, 2012.

The appropriate standard for consideration of all motions for summary judgment is as follows:

> Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  The movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. If the movant does so, the nonmovant must respond by submitting

evidentiary materials that set out specific facts showing that there is a genuine issue for trial.  On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.  Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.  The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

Torgerson v. City of Rochester, 643 F.3d. 1081, 1085 (8th Cir. June 1, 2011)( internal citations and quotations omitted); *see also*, Jackson v. United Parcel Service, Inc., 643 F.3d. 1031, 1042 (8th Cir. 2011)(*citing* Torgerson, *supra.*).

Plaintiff asserts that he was arrested without probable cause because he was not violating the Order of Protection in effect at the time; i.e. he was not at his ex-wife's (Stephanie Wommack) house but rather in an adjacent field, in his tractor, planting beans.  He argues that the defendant officers failed to read the entire Order of Protection and, if they had, they would have known that it only prevented him from entering the house which plaintiff contends constitutes the "premises" as that term is used in the Order of Protection.  He further contends that Stephanie Wommack's statements to the defendant officers as to the plaintiff's state of mind and alleged hostility towards law enforcement officers was insufficient to establish probable cause to arrest. Plaintiff further asserts that excessive force, as to being tased during the course of the arrest, was excessive because he was afraid of the defendant officers, that his refusal to comply with their requests to come off of the tractor was due to his fear and desire to try to explain why he had a right to be in the field, and that he was not "actively resisting arrest" but rather trying to protect himself from the defendant officers.

Defendants contend that at the time of the arrest, a valid Order of Protection was in effect barring the plaintiff from the "premises" which they believed included all property adjacent to the actual residence.  Furthermore, that based upon Ms. Wommack's statements at the time, they reasonably believed that plaintiff was in violation of the Order of Protection, and that given the nature of the Order of Protection, that plaintiff had the propensity to engage in violent behavior. They further argue that plaintiff was repeatedly told to get off the tractor which he refused to do so; and that given his hostile behavior towards the defendants and his sudden movement towards the cab of the tractor (the inside of which the defendants could not observe), the defendants had a reasonable belief that he could be reaching for a weapon and that their safety was in jeopardy. Finally, they contend that the tasing was not excessive given the plaintiff's refusal to comply with their orders despite being told he was under arrest and warned of the use of the Taser, and his continuing physical resistance to being handcuffed, including inflicting injury upon the defendants.  Defendants contend that they have not violated plaintiff's constitutional rights; and in the alternative, are entitled to qualified immunity.

Prior to addressing the legal issues presently before the Court, the Court needs to address two other matters.  Firstly, the Court's recitation of facts is largely derived from the defendants' Statement of Uncontroverted Facts [27], and the defendants' response to the plaintiff's Additional Statement of Material Facts [36].  Plaintiff filed a response to the defendants' Statement of Uncontroverted Facts [31-2].  In his response, plaintiff admitted most of the material facts.  As for his denials, he failed to cite to competent record evidence to support his denials. For example, Fact Statement #33 states: "Plaintiff repeatedly kicked Defendant Loggia in the left side of the face and shoulder area.  The kicking snapped the glasses that Defendant Loggia was wearing on his face."  Plaintiff responds: "Denied.  Trial Transcript p. 134

3

(recounting how his body 'just lunged'); p. 139 (flying off the tractor)."  This response is completely inadequate.  It fails to address the "fact" at all and simply citing to a portion of a trial transcript out of context fails to meet the spirit and intent of Local Rule 4.01(E) and Rule 56.  These types of "denials" are meaningless and will not be considered as a competent challenge to the fact statement.[1]

As for the plaintiff's Additional Statement of Material Facts [32-3], most of the "facts" are immaterial and not relevant to the issues present in this case.  For example, Ms. Wommack's hiring of off-duty Lincoln County deputies to provide private security for herself, or plaintiff being in the field, on a tractor, planting beans at his mother's request, or simply is irrelevant to the Court's consideration of the issues of probable cause and/or excessive force.[2]  Furthermore, any statements to the effect of the actual ownership of the field in question is not only irrelevant to the issues at hand, but plaintiff has failed to file any documentation supporting these "facts."

The Court shall only consider those facts supported by competent evidence, disregard any facts considered immaterial or irrelevant to the issues pending before the Court, and deem admitted those facts not properly controverted by competent evidence.  As to any material facts the Court considers in dispute, the Court's recitation of facts accepts the plaintiff's version as true.

Secondly, the Court must admonish both parties as to their submission of certain exhibits.  Both parties have submitted copies of the Petition for Order of Protection, Ex Parte Order of

---

[1]Similar "denials" are found as to Defendants' Statement of Uncontroverted Facts, Nos. 32, 34, 36, 38.

[2]The irrelevancy of these matters will be apparent in the Court's forth coming review and analysis of the issues of probable cause to arrest and whether the use of a Taser (in this case) constitutes unconstitutional excessive force.

Protection dated February 16, 2007, a Full Order of Protection dated August 6, 2007, an Order of Continuance dated August 1, 2007, and a purported "trial transcript" related to criminal charges brought against the plaintiff relating to the activities giving rise to this lawsuit.  None of these exhibits, whether filed by the plaintiff or the defendants, is accompanied by any attestation of authenticity.  Furthermore, the "trial transcript" filed by the parties is a single, unauthenticated, incomplete document.  As a single document, it fails to identify the witness whose testimony is being cited by the parties in their pleadings.  It requires the Court to guess as to the identity of the witness by the nature of the testimony.  Although the Court is permitted to take judicial notice of public records and other judicial proceedings, these exhibits fall short of proper admission before this Court.  Since these documents are crucial to the Court's ultimate decision in this summary judgment matter, the Court will accept these documents as exhibits for consideration.  However, counsel are forewarned that, in the future, this Court will not accept for consideration such exhibits if filed without proper authentication and identification.  Thus, the Court will consider all exhibits, including but not limited to affidavits and deposition testimony, as filed by the parties.

Turning now to the facts of this case, during the relevant time-period, defendants Sean Brown and Eric Loggia were employed as sheriff's deputies for the Lincoln County Sheriff's Department.

As of early 2007, plaintiff was married to Stephanie Wommack and had resided with her at a residence located at 86 South Millwood Rd., in Silex, Missouri.  The residence is a rural single family home structure located on approximately 48 acres of farm ground.  There is no fence or physical structure that separates the home from the surrounding agricultural fields.

On February 16, 2007 Stephanie Wommack filed a Petition for an Order of Protection against plaintiff.  Plaintiff's Exhibit 1.[3]  The Petition identifies the plaintiff as a 45 year old man, 6'2", and weighing 270 lbs.  The Petition further sets out instances of physical threats of harm to Stephanie Wommack by plaintiff.  Ms. Wommack requested an order of protection, pursuant to Missouri's Adult Abuse Act, §§ 455.010 - 455.085 R.S.Mo., prohibiting the plaintiff from:

> 1) abusing, threatening to abuse, molesting or disturbing the peace of Petitioner **[Stephanie Wommack]** wherever Petitioner may be found;
> 2) stalking Petitioner;
> 3) entering the dwelling of Petitioner located at **[86 South Millwood Rd.]**; and
> 4) communicating with Petitioner in any manner or through any medium.

Plaintiff's Exhibit 1.

On February 16, 2007, the 45th Judicial Circuit Court of Lincoln County, Missouri entered an Adult Abuse/Stalking Ex Parte Order of Protection in favor of Stephanie Wommack and against the plaintiff.  Defendants' Exhibit 2 [26-2].  Pursuant to the Ex Parte Order, plaintiff was ordered not to: abuse, threaten to abuse, stalk molest or disturb the peace of Petitioner **[Stephanie Wommack]** wherever Petitioner may be found; enter or "stay upon the premises" wherever the Petitioner may reside (listing the address of 86 S. Millwood Rd.); or communicate with Petitioner in any manner or through any medium.

On May 6, 2007 plaintiff and Stephanie Wommack were divorcing and living apart.  Ms. Wommack lived at the residence located at 86 S. Millwood Rd.

---

[3]The Court will cited to exhibits where necessary. In certain instances, the parties have filed the same exhibits.  The Court will cite to only one (1) of the exhibits for purposes of judicial efficiency and economy.  The Court's choice of the cited exhibit in no way reflects any particular bias on the part of the Court.

On May 6, 2007, defendants Brown and Loggia, in separate patrol cars, received a radio transmission from central dispatch that a violation of an ex parte order of protection was in progress at 86 S. Millwood Rd.  Defendant Brown testified at his deposition that central dispatch informed him that Stephanie Wommack had called in complaining that plaintiff was out in the field, adjacent to the house, in a tractor.  Deposition of Sean Brown [31-8], Defendants' Exhibit 4, pgs. 223-24.[4]  Defendants, dressed in their Lincoln County Sheriff's Department uniforms, responded to the residence located at 86 S. Millwood Rd.

Upon arriving at the residence, defendant Brown was advised by Ms. Wommack that plaintiff had been on her property. Upon arriving at the residence, defendant Brown confirmed that the ex parte order was still in effect, and was familiar with the terms and restrictions normally included in ex parte orders of protection.  While speaking with Ms. Wommack, defendant Brown could see plaintiff in an adjoining field in a tractor.  Ms. Wommack told defendant Brown that plaintiff was "crazy and going to try and hurt you."  Brown Affidavit [26-4], Defendants' Exhibit 4.

By the time defendant Loggia arrived, the defendants could see plaintiff driving the tractor behind the house and heading away from them.  The tractor being driven by plaintiff had an enclosed cab.  The top half of the cab was clear glass.  The bottom half of the cab was a non-transparent material so a person standing at ground level outside of the tractor could not see what was in the bottom half or the floor of the tractor cab.  The tractor had a ladder and a platform that allowed the operator to climb in and out of the tractor.  The platform was approximately 5 to 6 feet off of the ground.

---

[4]Since none of the parties filed a copy of the dispatch log, the Court considers the deposition testimony not for the truth asserted (plaintiff was actually out in field on tractor) but only that dispatch made this statement to defendant Brown.

7

Defendants attempted to make contact with plaintiff.  They first drove back down the road leading up to the house, got out of their cars, and started walking towards the tractor in the field.  They began waving their arms to get the plaintiff's attention and yelling for him to stop the tractor.[5] Plaintiff saw the defendants approaching but instead of stopping the tractor immediately, he drove the tractor to an adjoining property owned by his cousin.  He then stopped the tractor, exited the cab, and stood on the platform.  He knew that the defendants were law enforcement officers, as indicated by their uniforms.  By standing on the platform, plaintiff was in an elevated position relative to the defendants.

A confrontational exchange ensued between the plaintiff and the defendants.  The defendants gave plaintiff at least three (3) verbal commands to come down off the tractor which the plaintiff refused to do so. Plaintiff was not only told to get off of the tractor but was informed that he was under arrest for violation of a court order. In an agitated manner, plaintiff persistently told the defendants that the property he was on earlier was not subject to the ex parte order, the property he was currently on belonged to someone else, and that the defendants were trespassing. He continued to heatedly tell the defendants that he was not going to come off of the tractor.

Plaintiff became increasingly agitated and finally stated to the defendants "I will show you" and suddenly turned to re-enter the cab.  Unbeknownst to the defendants, plaintiff was re-entering the cab to retrieve some plat maps of the property to show the defendants.  However, the defendants could not see what was contained in the cab or what the plaintiff was attempting to

---

[5]Plaintiff contends that the defendants approached the tractor with "some kind of weapon drawn."  Trial Transcript [31-7], Plaintiff's Exhibit 3, pg. 130.  The defendants contend that neither of them approached the plaintiff with any kind of weapon drawn.  Trial Transcript [36-4], Defendants' Exhibit 4, pg. 37.

reach for inside the cab.  Given the hostile nature of the interaction, and not knowing if there were any weapons in the cab, the defendants feared for their safety.

To keep the plaintiff from re-entering the cab of the tractor, defendant Brown grabbed the plaintiff's shirt, while defendant Loggia grabbed the plaintiff's legs/jeans.  Plaintiff fell to the floor of the tractor platform and began to attempt to get out of the grasps of the defendants.  He began kicking at the defendants.  He repeatedly kicked defendant Loggia in the left side of the face and shoulder area, breaking the glasses that defendant Loggia was wearing.  He kicked defendant Brown in the chest causing Brown to fall to the ground.

Defendant Loggia gave several more commands to plaintiff to stop resisting or he would be tased.  Plaintiff refused to comply and continued to physically resist the defendants attempts to get him off of the tractor.  Defendant Brown used his Taser putting two (2) probes into the plaintiff's chest.  Plaintiff fell from the platform of the tractor to the ground and immediately ripped the Taser prong out of his chest, rendering the Taser ineffective.  Plaintiff continued to struggle against the defendants attempts to subdue him and place him in handcuffs.

When plaintiff attempted to get back on his feet, defendants attempted to subdue him again with peroneal strikes[6] but their attempts again were ineffective. Defendant Brown again

---

[6]According to defendant Brown's deposition testimony, a "peroneal strike" is a defense tactic taught to the Lincoln County Sheriff's Department deputies while taking a ground fighting class for certification.  Brown Deposition [31-8], Plaintiff's Exhibit 4.  "It is a strike to approximately I would say about three inches, four inches above the knee.  Basically in the center of the thigh area which it affects the muscle and nervous system when you strike it.  It's supposed to stop the subject from resisting.  We use it if we can apply it for a subject resisting.  It's a pain compliance technique."  Brown Depo. [31-8], Plaintiff's Exhibit 4. pg. 237.

9

deployed his Taser, but this time he employed a drive stun technique.[7]  Plaintiff fell to the ground again and the defendants were able to put his hands behind his back and handcuff him.

Upon finally being subdued, plaintiff's mother (Rita Wommack) arrived on the scene. Although she had previously been at Ms. Wommack's house, Rita Wommack had not witnessed any of the confrontation between the plaintiff and the defendants, including the tasing. Plaintiff complained to his mother that he was beaten by the defendants after being handcuffed, an allegation denied by the defendants.[8]

Due to the tasing, plaintiff was taken to the Lincoln County Medical Center for evaluation and a "fit for confinement" examination.  Brown Depo. [31-8], Plaintiff's Exhibit 4, pgs. 239; Deposition of Eric Loggia [31-9], Plaintiff's Exhibit 5, pg. 337. Plaintiff was found to be "fit for confinement" and taken to the Lincoln County jail.  Plaintiff has never sought or received treatment for any injuries in connection with his arrest, especially in connection with the tasing.[9] Trial Transcript [26-1], Defendants' Exhibit 1, pg. 149.

Under Missouri's Adult Abuse Act and its provisions, "Abuse" is defined as including, but not limited to "the occurrence of any of the following acts, attempts or threats against a

---

[7]Tasers can be employed in two ways.  A Taser is classified as an electromuscular disruptor when used to fire small probes attached to the weapon by thin wires because the probes override the body's central nervous system and make muscle control impossible.  Hoyt v. Cooks, 672 F.3d. 972, n.4 (11th Cir. 2012).  When a Taser is used as a pain compliance weapon, it is employed in "drive stun" mode.  In "drive stun" mode, the weapon is pressed against the body and the trigger is pulled resulting in pain (normally a burning sensation).  The "drive stun" mode does not disrupt muscle control.  Id..

[8]Whether or not the defendants "beat" plaintiff after handcuffing him is not the subject of the lawsuit nor addressed by the parties in connection with the defendants' summary judgment motion.  Plaintiff's claim for violation of his constitutional rights due to excessive force is clearly limited to the tasing.

[9]Plaintiff has not filed any exhibit or affidavit whatsoever indicating that he ever sought or received medical treatment for any alleged injury received during the arrest, especially in connection with the tasing.

person who may be protected pursuant to sections 455.010 to 455.085," such acts being

"harassment" defined as follows:

> engaging in a purposeful or knowing course of conduct
> involving more than one incident that alarms or causes
> distress to another adult and serves no legitimate purpose.
> The course of conduct must be such as would cause a
> reasonable adult to suffer substantial emotional distress and
> must actually cause substantial emotional distress to the
> petitioner.

§ 455.010(1) and (1)(d) R.S.Mo.

Under Missouri's Adult Abuse Act and its provisions, "Stalking" is defined as follows:

> when an adult purposely and repeatedly engages in an
> unwanted course of conduct that causes alarm to another
> person when it is reasonable in that person's situation to
> have been alarmed by the conduct.  As used in this subdivision:
>
> > (a) "Alarm" means to cause fear of danger of physical
> > harm.
> > (b) "Course of Conduct" means a pattern of conduct
> > composed of repeated acts over a period of time, however
> > short, that serves no legitimate purpose.  Such conduct
> > may, include, but is not limited to, following the other
> > person or unwanted communication or unwanted conduct;
> > (c) "Repeated" means two or more incidents evidencing a
> > continuity of purpose.

§ 455.010(10)(a)-(c) R.S.Mo.

Under Missouri's Adult Abuse Act and its provisions, "[W]hen a law enforcement officer

has probable cause to believe a party has committed a violation of law amounting to abuse or

assault, as defined in section 455.010, against a family or household member, the officer may

arrest the offending party whether or not the violation occurred in the presence of the arresting

officer."  § 455.085.1 R.S.Mo. (in pertinent part).  Furthermore, "[W]hen a law enforcement

officer has probable cause to believe that party, against whom a protective order has been entered

and who has notice such order entered, has committed an act of abuse in violation of such order,

the officer shall arrest the offending party-respondent whether or not the violation occurred in the presence of the arresting officer."  455.085.2 R.S.Mo. (in pertinent part).  Finally, "[I]n an arrest in which a law enforcement officer acted in good faith reliance on this section, the arresting and assisting law enforcement officers and their employing entities and superiors shall be immune from liability in any civil action alleging false arrest, false imprisonment or malicious prosecution." § 455.085.4 R.S.Mo. [10]

### §1983 - False Arrest

Plaintiff contends that defendants Brown and Loggia violated his Fourth Amendment rights against unreasonable seizure by falsely arresting him.  He contends the defendants lacked probable cause to arrest him because 1) the defendants failed to read the entire Ex Parte Order of Protection (the Order); 2) that Stephanie Wommack's statements to the defendants fail to provide adequate support for probable cause that plaintiff was violating the Order; and that material facts remain in dispute as to whether plaintiff was violating the Order because there is a dispute as to the interpretation of "premises" as used in the Order.

Defendants contend that probable cause to arrest the plaintiff existed because 1) both officers reasonably believed the Order to be in effect at the time and that plaintiff was violating the Order by being on the "premises" which they believed to be not only the actual physical house, but all adjoining property to the house; and 2) they reasonably believed Stephanie Wommack's statements that plaintiff was violating the Order by being on the tractor in a tractor on adjoining property to the house.  They further contend that even if they were mistaken as to whether plaintiff being in a tractor on adjoining property was actually "on the premises" in

---

[10]The Court takes judicial notice of the existence of this statute during the relevant time-period.

violation of the Order, they had "arguable probable cause" and are entitled to qualified immunity based upon the existence of the Order, prior instances of hostility between plaintiff and Stephanie Wommack, the plaintiff's presence on property adjacent to the "residence," and Stephanie Wommack's statements at the time.

A § 1983 false arrest claim relies on a substantive Fourth Amendment right to be free from unreasonable searches and seizures.  An arrest is a "seizure" as defined by the Fourth Amendment.  United States v. Watson, 423 U.S. 411, 428 (1976). "The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' In conformity with the rule at common law, a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed. Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."  Devenpeck v. Alford, 543 U.S. 146, 593 (2004)(internal citations omitted); see, Fisher v. Wal-Mart Stores, Inc., 619 F.3d. 811, 816 (8th Cir. 2010); see also, Royster v. Nichols, 2012 WL 5308046, *4 (8th Cir. Oct. 30, 2012)(citing Fisher, supra.).  Whether the defendant police officers had probable cause at the time of a plaintiff's arrest is a question of law for a court to decide.  Fisher v. Wal-Mart Stores, Inc., at 816; Peterson v. City of Plymouth, 60 F.3d 469, 475 (8th Cir. 1995); Royster v. Nichols, supra.

> An officer has probable cause to make a warrantless arrest when the facts and circumstances are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.  To determine the existence of probable cause, we look at the totality of the circumstances as set forth in the information available to the officers at the time of arrest.  As probable cause is determined at the moment the arrest was made, any later developed facts are irrelevant to the probable cause analysis for an arrest. [O]fficers are generally

entitled to rely on the veracity of information supplied by the
victim of a crime.

Fisher, at 816-17; Reed v. LaNasa, et. al., 2011 WL 1630898, *3 (D.Minn. April 29, 2011);

Royster v. Nichols, at *4-*5;  see also, McCabe v. Parker, et. al., 608 F.3d. 1068, 1077-78 (8th

Cir. 2010).

 "The substance of all the definitions of probable cause is a reasonable ground for belief of

guilt."  Green v. State of Missouri, 734 F.Supp.2d. 814, 832 (E.D.Mo. 2010)(quoting Brinegar v.

United States, 338 U.S. 160, 175 (1949)).  "A reasonable ground for belief means more than bare

suspicion, but less than evidence which would justify condemnation or conviction."  Baribeau v.

City of Minneapolis, 596 F.3d. 465, 474 (8th Cir. 2010); Green v. State of Missouri, at 832; Reed

v. LaNasa, at *3.

 An officer's subjective reason for making the arrest need not be the criminal offense as to

which the known facts provide probable cause.  Devenpeck v. Alford, 453 U.S. at 153.  Thus, a

law officer may effect a warrantless arrest, even if there is no lawful basis for the actual charges

brought, as long as there is probable cause to believe some criminal offense had been committed.

McCabe v. Parker, at 1077-78 citing Devenpeck v. Alford, supra; Lingo v. Burle, 2008 WL

2787703, *6 (E.D.Mo. July 15, 2008)(citing Devenpeck v. Alford, supra. for the proposition that

"if the facts and circumstances within [defendant police officers] knowledge were sufficient to

warrant a prudent person in believing plaintiff had committed or was committing an offense,

even if that offense was not the offense actually invoked at the time of the arrest, they had

probable cause to arrest [the plaintiff]").

 In the instant case, the defendants were told by their dispatcher that Stephanie Wommack

had called to report that plaintiff was in a tractor on "her property" in violation of the Ex Parte

Order of Protection.  When the defendant Brown arrived, Stephanie Wommack again told him

14

that plaintiff's presence was in violation of the Order.  Defendant Brown reviewed the Order to ascertain whether or not it was in effect, and based upon his prior experience with such Orders of Protection, reasonably believed that the plaintiff's presence in a tractor on an adjoining field was in violation of the Order because he was "on the premises." Finally, defendant Brown was aware of Stephanie Wommack's fear of the plaintiff due to her hiring of off-duty Lincoln County Sheriff Department deputies, including on one (1) occasion defendant Brown, to provide private security while the Order was in effect.

Plaintiff contends that the defendants should have read the entire Order before coming after him, and if they had, they would have known he wasn't in violation of the Order. Plaintiff interprets the Order as only preventing him from being at the "residence" or entering the "residence."  Essentially, plaintiff argues that the defendants should have investigated further the meaning of "premises" and whether his actions on May 6, 2007 constituted a violation of the Order.  "In considering information given by a victim of a crime, an officer need not conduct a 'mini-trial' before effectuating an arrest although he cannot avoid 'minimal further investigation' if it would have exonerated the suspect." Royster v. Nichols, at *5 *quoting* Borgman v. Kedley, 646 F.3d. 518, 523 (8th Cir. 2011)(citation omitted); *see*, Fisher, at 817 *citing* Armine v. Brooks, 522 F.3d. 823, 832 (8th Cir. 2008).  The defendants had a viable Order of Protection which prevented the plaintiff from "disturb**[ing]** the peace of Petitioner **wherever Petitioner may be found** (emphasis added)" and from "enter**[ing]** or stay**[ing] upon the premises wherever the Petitioner may reside** (emphasis added).  The Order does not define the term "premises." Stephanie Wommack believed the "premises" included not only the actual house but also all adjoining property to the house owned by her (and the plaintiff presumably).  She relayed her belief to the defendants, and they had no objective evidence, at the time, to the contrary.  Law

15

enforcement officers, such as the defendants, are generally entitled to rely on the veracity of information supplied by the victim of a crime.  Fisher, at 817; Royster v. Nichols, at *5 *citing* Fisher, *supra.*  Plaintiff, however, argues that his statements to the defendants that he was not violating the Order because he had not been at the house or had attempted to enter the house should have stopped the defendants from arresting him.  This argument fails because "[w]hen an officer is faced with conflicting information that cannot be immediately resolved, however, he may have arguable probable cause to arrest a suspect . . . and although [i]t is usually not possible for an officer to be certain about a suspect's state of mind at the time of a criminal act, . . . he need not rely on an explanation given by the suspect."  Royster v. Nichols, at *5 *quoting* Borgman, at 523-24.

Plaintiff exerts much energy arguing that he wasn't in violation of the Order when the defendants arrested him but that is not the standard by which to adjudge probable cause to arrest. It is irrelevant whether plaintiff actually violated the Ex Parte Order of Protection.  A probable cause determination is based upon what the defendants knew and observed on May 6, 2007, and whether a reasonably prudent officer, under the same circumstances, would have made the same decision to arrest the plaintiff.  Ultimately, this Court must determine from the totality of the circumstances whether a prudent person would believe that plaintiff had committed a crime or was committing a crime by being on property adjacent to Stephanie Wommack's home such as "being on the premises," giving the defendants substantial latitude in interpreting and drawing inferences from factual circumstances.  *See*, Royster v. Nichols, at *4 *citing* Fisher, at 816. Viewing the evidence before the Court, and in consideration of the "totality of the circumstances" including drawing all reasonable inferences in the light most favorable to plaintiff, while viewing the undisputed facts from the perspective of a reasonable officer on the

16

scene, the Court concludes that defendants Brown and Loggia had probable cause to arrest plaintiff Wommack.  There was an Order of Protection in effect at the time of the arrest.  The Order prevented plaintiff from "disturbing the peace of the Petitioner wherever Petitioner was found" and from not just entering but "staying on the premises wherever the Petitioner resides." Without any further definition of "premises," Stephanie Wommack and the defendants reasonably believed that "premises" included not only the physical house but all adjoining property.[11]  It is undisputed that when the call came in to the central dispatch and when Defendant Brown first arrived on the scene, plaintiff was in a tractor on a field owned by plaintiff and Stephanie Wommack.  Furthermore, this field was adjacent to the house in which Stephanie Wommack was currently residing. Defendant Brown was aware of a hostile relationship between plaintiff and Stephanie Wommack giving rise to the Order of Protection and her hiring of off-duty law enforcement officers to provide her with private security while the Order was in effect. The defendant officers had reasonably trustworthy information to believe that plaintiff, by his presence in a tractor on property adjacent to the house, had violated the Ex Parte Order of Protection subjecting him to arrest.

Even if plaintiff's actions did not technically violate the Ex Parte Order of Protection, probable cause still existed for making the arrest.  Plaintiff has not offered any argument that the conduct reported by Stephanie Wommack on May 6, 2007 was not unlawful under the Missouri Adult Abuse Act. *See*, Davenpeck v. Alford, 453 U.S. at 153 (if the facts and circumstances within an officer's knowledge were sufficient to warrant a prudent person in believing plaintiff

_____

[11]In fact, "premises" is defined as including not only a house but the land surrounding it. *See*, **Webster's Ninth New Collegiate Dictionary**, premises definition, 928 (9th Ed. 1984)(a tract of land with the buildings thereon); **Black's Law Dictionary,** premises definition, 1062-63 (5th Ed.1979)(The area of land surrounding a house, and actually or by legal construction forming one inclosure with it; Land and its appurenances).

had committed an offense, even if not the offense actually invoked at the time of the arrest, the officer has probable cause to arrest).  Stephanie Wommack had reported the plaintiff several times to the police as harassing her by showing up at her home or on her property.  Stephanie Wommack Depo. [26-3], Defendants' Exhibit 3, pgs. 6-7.  She was so fearful for her safety that she hired off-duty law enforcement officers to provide private security.  Finally, there was a past history of physical threats and abuse giving rise to the enactment of the Ex Parte Order of Protection.  Such factors meet the requirements of the Missouri Adult Abuse Act, and if an officer has probable cause to believe that an individual has committed even a minor criminal offense, such as violating the Missouri Adult Abuse Act by continuing to show up at Stephanie Wommack's house and the adjacent property, a warrentless arrest may be made without violating the Fourth Amendment.  Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001); Baribeau v. City of Minneapolis, 596 465, 474 (8th Cir. 2010); Green v. State of Missouri, 734 F.Supp.2d. 814, 832 (E.D.Mo. 2010).

Since the Court has determined that actual probable cause existed to arrest the plaintiff, the Court need not determined whether qualified immunity shields the defendants.  See, Fisher, at 818 citing Peterson v. City of Plymouth, 60 F.3d. 469, 473 (8th Cir. 1995), Foster v. Metro. Airports Comm'n, 914 F.2d. 1076, 1079 (8th Cir. 1990).


## § 1983 - Excessive Force

Plaintiff contends that the defendants' use of a Taser against him was excessive and in violation of his Fourth Amendment rights. He argues that the Taser use was excessive because although he was resisting arrest, he was trying to explain why he was not complying with their orders to come off of the tractor; and furthermore, he was only reaching into the cab of the tractor

to attempt to retrieve certain plat maps to show the defendants.  He argues that he wasn't sure that the officers were actually on-duty law enforcement officers, and not the private security officers Stephanie Wommack had been using.  He claims that he was fearful based on incidents of aggression by Lincoln County Sheriff's Department deputies towards civilian told to him by other people.

Defendants contend that their use of the Taser was not excessive force in violation of plaintiff's Fourth Amendment rights.  They argue that by virtue of the Ex Parte Order of Protection, defendants were on notice that plaintiff had engaged in hostile behavior previously; that Stephanie Wommack had told defendant Brown that the plaintiff "was crazy and was going to try and hurt you;" that when the defendants began approaching the plaintiff, he drove the tractor to another field owned by a relative; that plaintiff refused several commands to come off of the tractor; that plaintiff was told he was being placed under arrest for violation of the Ex Parte Order of Protection; that plaintiff was confrontational with the defendants; that he is a large man and by standing on the tractor's platform above the defendants, in an agitated state, plaintiff posed a physical threat to the defendants, that when plaintiff made a sudden move to reach into the cab, since the defendants did not know what was in the cab and given the plaintiff's hostile behavior towards them, they had a reasonable fear for their safety, that when they grabbed the plaintiff and told him he would be tased if he didn't stop resisting their attempts to subdue him, he still physically resisted, and even after he was tased the first time, he still continued to resist their attempts to subdue him.  Defendants argue that given the totality of the circumstances, their use of the Taser was not excessive and not in violation of the plaintiff's constitutional rights.

Defendants further contend that they are entitled to qualified immunity because as of May 6, 2007, the law was not clearly established that the use of a Taser constitutes excessive force in violation of the Fourth Amendment.

"Qualified immunity shields government officials from liability in a §1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known."  Johnson v. Carroll, 658 F.3d. 819, 825 (8th Cir. 2011) *quoting* Brown v. City of Golden Valley, 574 F.3d. 491, 495 (8th cir. 2009); *see*, Pearson v. Callahan, 555 U.S. 223, 236 (2009).  The inquiry into a qualified immunity defense is two-fold: whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right; and whether that right was clearly established at the time of the defendant's alleged misconduct. Pearson v. Callahan, *supra.*; Saucier v. Katz, 533 U.S. 194, 201 (2001); Johnson v. Carroll, at 825; Brown v. City of Golden Valley, at 496; *see*, White v. Smith, 2012 WL 4856751, *10 (8th Cir. Oct. 15, 2012)(*citing* Brown, *supra.* and Saucier v. Katz, *supra.*).  The answer to both of these inquiries must be "yes"; otherwise, a defendant is entitled to qualified immunity.  Krout v. Goemmer, 583 F.3d. 557, 564 (8th Cir. 2009); *see*, White v. Smith,, at *10 (*citing* Krout, *supra.*). A court may use its discretion as to which of these inquiries it first chooses to address in light of the particular circumstances of the case in hand.  Pearson v. Callahan, 555 U.S. at 242; Johnson v. Carroll, at 825; *see*, White v. Smith, at *10 (*citing* Pearson v. Callahan, *supra.*).

When qualified immunity is raised at the summary judgment stage, a plaintiff must produce sufficient evidence to create a genuine issue of fact as to whether the defendant violated a clearly established right.  The proper course is to view the facts and draw reasonable inferences in the light most favorable to the plaintiff's "version of facts" and then to assess the constitutionality of the challenged conduct.  However, when the nonmoving party's "version of

20

the facts" is "so utterly discredited by the record that no reasonable jury could believe it, the court should not rely on 'such visible fiction.'"  Roberts v. City of Omaha, 2012 WL 4831545, *4 (D.Neb. Oct. 10, 2012)(internal citations omitted); *see also*, Gilliam v. Southard, 2011 WL 24443761, *4 (E.D.Mo. June 15, 2011)(internal citations omitted).

The Court's first inquiry in this case, given its particular circumstances, is whether the defendants' actions in tasing the plaintiff constituted excessive force in violation of plaintiff's Fourth Amendment rights.  Claims of excessive force are evaluated under the reasonableness standard of the Fourth Amendment.  Montoya v. City of Flandreau, 669 F.3d. 867, 870 (8th Cir. 2012); Johnson v. Carroll, at 825; McKenney v. Harrison, 635 F.3d. 354, 359 (8th Cir. 2011). Not every push or shove rises to the level of a constitutional violation. Montoya v. City of Flandreau, at 871; Rohrbough v. Hall, 586 F.3d. 582, 585 (8th Cir. 2009); Cook v. City of Bella Villa, 582 F.3d. 840, 849 (8th Cir. 2009); *see*, Royster v. Nichols, at *6.  However, force is deemed excessive when the officer's actions are not objectively reasonable in light of the facts and circumstances confronting them.  Carpenter v. Gage, 686 F.3d.644, 649 (8th Cir. 2012); Montoya v. City of Flandreau, at 871; Rohrbough, at 585; *see*, Royster v. Nichols, at *6.  The Fourth Amendment reasonableness standard requires a review of the totality of the circumstances, including the severity of the crime, whether the suspect posed a threat to the safety of the officer(s) or others, and whether the suspect was resisting arrest, or attempting to flee.  Carpenter v. Gage, at 649; Montoya, at 871; Rohrbaugh, at 586; Cook v. City of Bella Villa, at 849; *see*, Royster v. Nichols, at *6.  The reasonableness of the officer's use of force is judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Carpenter v. Gage, at 649 (*citing* Graham v. Connor, 490 U.S. 386, 396 (1989)); Mann v. Yarnell, 497 F.3d. 822, 826 (8th Cir. 2007)(*citing* Graham v. Connor, *supra.*).

21

"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgment - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." Gill v. Maciejewski, 546 F.3d. 557, 562 (8th Cir. 2008)(*quoting* Graham v. Connor, 490 U.S. at 396-97); *see*, McKenney v. Harrison, at 360 (*citing* Graham v. Connor, *supra.*).  A plaintiff's subjective motivation(s) for resisting arrest is immaterial since the reasonableness of the force is grounded in the perspective of a reasonable officer at the scene.  *See*, Carpenter v. Gage, at 650 (even if the plaintiff's motive for his actions were "innocent" in nature, the defendant deputies on the scene reasonably could have interpreted the plaintiff's actions as resistance)(*citing* McKenney v. Harrison, at 360); *see also*, Luepker v. Taylor, 2010 WL 2696701, *9 (E.D.Mo. July 6, 2010)(whether the plaintiff's flailing and striking the defendants were "unintended" is irrelevant to the reasonableness of the defendants' use of force because the plaintiff's actions resisted the defendants' attempts to subdue and arrest him); Holtgreven v. O'Fallon Police Department, 2009 WL 2032164, *9 (E.D.Mo. July 8, 2009)(finding that it was reasonable for the defendant officers to view the plaintiff as actively resisting arrest and to use a Taser to subdue the plaintiff although his actions were the result of a diabetic shock).  Furthermore, an act taken based upon a mistaken perception or belief, if objectively reasonable, does not violate the Fourth Amendment.  Loch v. City of Litchfield, 689 F.3d. 961, 966 (8th Cir. 2012)((*citing* Krueger v. Fuhr, 991 F.2d. 435, 439 (8th Cir. 1993)).  "Even if a suspect is ultimately 'found to be unarmed, a police officer can still employ deadly force if objectively reasonable.'"  Loch, at 966 (*quoting* Billingsly v. City of Omaha, 277 F.3d. 990, 995 (8th Cir. 2002)).  However, force is least justified against nonviolent misdemeanant who are not attempting to flee or resist arrest, and poses little or no threat of danger to the officers or the public.  Shekleton v. Eichenberger, 677 F.3d. 361, 366 (8th Cir.

2012); Montoya v. City of Flandreau, at 871; Johnson v. Carroll, at 827-28; Brown v. City of Golden Valley, at 499.

Finally, the Eighth Circuit Court of Appeals has recently addressed the issue of whether the severity of the plaintiff's injury can be dispositive of the excessive force determination.  The degree of injury suffered in an excessive force case "is certainly relevant insofar as it tends to show the amount and type of force used."   Chambers v. Pennycook, 641 F.3d. 898, 906 (8th Cir. 2011); *see*, Johnson v. Carroll, at 826 (*citing* Chambers v. Pennycook, *supra.*).  "A *de minimus us of force* is insufficient to support a claim, and it may well be that most plaintiffs showing only *de minimus* injury can show only a corresponding *de minimus* use of force."  Chambers v. Pennycook, at 906; *see*, Royster v. Nichols, at *7 (*quoting* Chambers v. Pennycook, *supra.*).  However, the possibility still exists for a plaintiff to prove an excessive force claim that caused only a minor injury.  Chambers v. Pennycook, at 906; *see*, Royster v. Nichols, at *7 (*citing* Chambers v. Pennycook, *supra.*).  The reason being that the nature of the force applied cannot be correlated perfectly with the type of injury inflicted since people vary in how their bodies might react to any particular use of force.  Thus, the extent of the injury can only provide some indication of the amount of force applied, but is not dispositive of the matter.  Chambers v. Pennycook, at 906-07; Royster v. Nichols, at *7 (*citing* Chambers v. Pennycook, *supra.*).

Viewing the record before the Court and drawing all reasonable inferences in the light most favorable to plaintiff, while simultaneously viewing the facts from the perspective of a reasonable law enforcement officer on the scene, the Court finds that the defendants' use of the Taser was objectively reasonable as a matter of law. The defendants arrived on the scene as a result of their dispatcher's call that Stephanie Wommack had called complaining that plaintiff was violating the Ex Parte Order of Protection by being in a tractor in a field adjacent to her

23

residence.  When defendant Brown arrived first, he ascertained that the Order was in effect and barred the plaintiff from the "premises."  It is undisputed that the plaintiff was in a tractor in a field adjacent to the resident when the defendants had arrived to the scene.  It is undisputed that Stephanie Wommack told the defendants that the plaintiff was "crazy" and would "try to hurt you."

It is undisputed that the defendants were in uniform while approaching the plaintiff, and attempted to make contact with the plaintiff by waving their arms and yelling to indicate to the plaintiff to stop the tractor.  Plaintiff did not stop the tractor, but instead continued to drive it farther away to a nearby field owned by a relative.  It is undisputed that when the parties met up, plaintiff was confrontational with the defendants, standing on the platform above them, and engaging in a heated argument with the defendants.  Despite being told a number of times to get off of the tractor and that he was under arrest for violating the Order, plaintiff persisted in yelling at the defendants and telling them he would not get off the tractor and that the defendants were "trespassing."  It is undisputed that he suddenly made a move to get something out of the cab; the cab's interior being obscured and the defendants not knowing what the plaintiff was reaching for at the time.  By virtue of the existence of the Ex Parte Order of Protection, the defendants knew that the plaintiff had previously engaged in threatening behavior, at least towards his (ex)wife. Even as the defendants grabbed him, he continued to yell and physically assault them by kicking them in the face and the chest.  He was warned about the use of the Taser if he didn't calm down and submit to being taken into custody, but he still refused to comply.  Even after being tased, he still refused to comply with the orders of the defendants, and only did so after being tased a second time. Finally, plaintiff was taken to a local medical facility and found to be "fit for containment" and he has presented no objective evidence of any injury, *de minimus* or not.

Given the totality of the circumstances as known and observed by the defendants, the use of the Taser was objectively reasonable under the circumstances. Plaintiff attempted to flee the scene and aggressively resisted arrest. Even if his motives were "innocent," the deputies on the scene reasonably interpreted his actions as resistance and responded with the amount of force that was reasonable to effect the arrest. Carpenter v. Gage, at 650. Plaintiff's sudden movement to reach into the cab, into a space not visible to the defendants, was reasonably viewed as a threat to the safety of the defendants (i.e. a reasonable belief that the plaintiff was reaching for a weapon). *See*, McKenney v. Harrison, at 360 (the plaintiff's sudden movement toward an open window could reasonable be construed as an active attempt to evade arrest by flight). Plaintiff was warned about the use of the Taser, yet still refused to comply with the defendants' orders. Where a person is physically resistant and non-compliant with the orders of a law enforcement officer, the use of a Taser has been found to be objectively reasonable. *See*, McKenney v. Harrison, *supra.*; Cook v. City of Bella Villa, *supra.*; Clark v. Ware, 2012 WL 1994788 (E.D.Mo. June 4, 2012) Jones v. Clark, 2012 WL 388699 (D.Minn. Feb. 7, 2012); Luepker v. Taylor, *supra.*; Holtgreven v. O'Fallon Police Department, *supra*.

However, whereas in those cases where a Taser was found to be an excessive use of force, the circumstances confronting the law enforcement officer were not similar to the circumstances confronting defendants Brown and Loggia. In Shekleton v. Eichenberger, *supra.*, the defendant police officer Eichenberger believed that he had observed the plaintiff and a third-party engaged in a heated argument outside a bar. Eichenberger confronted Shekleton about the argument, and Shekleton denied any argument and turned away to lean up against a wall. Defendant Eichenberger continued to question him, the plaintiff became agitated, and refused to answer any more questions. He turned away from the wall to face the defendant, while unfolding

25

his arms.  Defendant Eichenberger believed that plaintiff was intoxicated and engaging in threatening behavior, and decided to arrest him.  When he tried to place the plaintiff's arms behind his back, the plaintiff told him he couldn't do so due to a physical disability of which the defendant was aware. Defendant Eichenberger continued to forcefully attempt to place Shekleton's arms behind him in order to cuff him, but the men fell to the ground, and plaintiff broke free of Eichenberger's hold.  Defendant Eichenberger determined that the plaintiff was resisting arrest, and tased him.  Id., at 366.

The Court determined that the tasing was in violation of Shekleton's constitutional rights. It concluded that because Shekleton was an unarmed suspected misdemeanant, who did not resist arrest, did not threaten the officer, did not attempt to run from the defendant, and did not behave aggressively towards the defendant, the force used (i.e., the tasing) was excessive.  Id., at 366.

In Bell v. Kansas City Police Department, 635 F.3d. 346 (8th Cir. 2011), plaintiff Bell was stopped by the defendants while driving a truck.  The Court determined that there was a material issue of fact in dispute because the defendants attested that the plaintiff was tased after disobeying orders to show his hands and get out of the truck; whereas the plaintiff attested that he was tased despite complying the orders and had placed the truck in park, turned off the engine, and placed his hands in the air.  Id., at 347.  Furthermore, subsequent to the tasing, the plaintiff had been hospitalized overnight for an irregular heartbeat and chest pain.  That fact alone created a jury question as to whether the tasing caused plaintiff Bell injury suggesting that the force used was unreasonable and excessive.  Id., at 347.

Finally, in Brown v. City of Golden Valley, supra., plaintiff Brown was a passenger in a car driven by her husband.  Upon making a traffic stop, and defendants allegedly using aggressive force to remove the husband and place him under arrest, plaintiff used her cellphone

26

to call 911. Defendant Zarrett observed the plaintiff on the phone, yanked open the passenger side door, and yelled at Brown to get off the phone.  Brown responded that the defendant was frightening her and refused to give up the phone.  While continuing to yell at the plaintiff, defendant tased the plaintiff, grabbed the phone and threw it out onto the shoulder of the road.  Id., at 494.  Plaintiff was removed from the car, handcuffed and taken to the local jail facility.  She was charged with obstruction of legal process and an open bottle violation.  Following her arrest, plaintiff sought medical treatment for depression and an anxiety disorder stemming from the incident.  Id., at 495.

The Court determined that plaintiff's constitutional rights had been violated by defendant Zarrett's tasing of the plaintiff. It determined that the tasing was excessive force as it was used against a nonviolent, suspected misdemeanant who was not fleeing or resisting arrest, who posed little or no threat to anyone's safety, and whose only noncompliance with the defendant's commands was to disobey two orders to end her 911 phone call.  Id., at 496-499.

Here, plaintiff was not a suspected misdemeanant simply minding his own business and compliant with all the orders expressed by the defendant law enforcement officers.  On the contrary, he was observed in violation of the Ex Parte Order of Protection, he was confrontational, he aggressively refused to comply with the defendants' orders to exit the tractor and/or platform, he was told he was under arrest, he made a sudden movement to reach into a compartment hidden from the defendants, he physically resisted the defendants' attempts to subdue him prior to the tasing, he was warned of the tasing, and he still physically resisted arrest despite the first tasing.  The use of the Taser was objectively reasonable under these circumstances.

Even if the tasing were to be viewed as excessive force, the defendants would still be entitled to qualified immunity.

It was clearly established by 2007 that a use of excessive force by a law enforcement official in making an arrest violates a citizen's Fourth Amendment rights.  *See*, Graham v. Connor, 490 U.S. at 388; Montoya v. City of Flandreau, at 872 (noting that such a right was clearly established in the context of an excessive force claim in 2006); Chambers v. Pennycook, at 908 (noting that such a right was clearly established in the context of an excessive force claim in August 2005).  However, when determining whether an action was a clearly established constitutional violation, the courts must look to the state of the law at the time of the incident. Shekleton v. Eichenberger, at 366; *see*, White v. Smith, at *15 (*citing* Shekleton, *supra.*).  A right is "clearly established" when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right. Montoya v. City of Flandreau, at 873; Johnson v. Carroll, at 827. This standard does not require that an official action be protected by qualified immunity unless the very action in question has been previously held unlawful. Johnson v. Carroll, at 827;  Brown v. City of Golden Valley, at 499.  It does not require that there be a case with materially or fundamentally similar facts, but only that it would be clear to a reasonable officer that his current conduct was unlawful in the situation he confronted. Johnson v. Carroll, at 827; Brown v. City of Golden Valley, at 499. Officials can still be on notice that their conduct "violates established law even in novel factual circumstances." White v. Smith, at *15 (*citing* Hope v. Pelzer, 536 U.S. 730, 741 (2002)).  As of May 2007, it was clearly established that excessive force may not be used against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public. *See*, Montoya v. City of Flandreau, at 873 (the incident in question occurred in November 2006);

28

Brown v. City of Golden Valley, at 499 (the incident in question occurred in October 2005); *but see*, Shekleton v. Eichenberger, at 367 (noting that although as of September 6, 2008 the Eighth Circuit had yet to determine whether an officer's use of a Taser on a nonviolent, nonfleeing misdemeanant was an excessive use of force; however, general constitutional principles against excessive force were clearly established at the time that would have put a reasonable officer on notice that tasing a plaintiff under circumstances in the case was a use of excessive force).

However, what was not clearly established as of May 2007 was whether force was considered excessive when it involved a tasing resulting in a *de minimus* injury.

The use of deadly force is reasonable where an officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others.  Loch, at 965 (*citing* Tennessee v. Garner, 471 U.S. 1, 11 (1985)).  As stated previously, this includes whether the police officer was under the reasonable mistaken belief that the suspect is armed.  Given this standard, as of May 2007, courts have found that use of a Taser in response to a person who is reasonably believed to be armed, or is physically resistant to other efforts to subdue him for purposes of arrest to be objectively reasonable.  Mann v. Yarnell, 497 F.3d. 822, 827 (8th Cir. 2007)(tasing in 2001 was appropriate "by the need to immobilize a recalcitrant and potentially dangerous suspect."); Clark v. Ware, at *3 (noting that in connection with a November 2009 arrest the use of a Taser was objectively reasonable on a suspect who was physically resistant and non-compliant with a law enforcement officer); Holtgreven v. O'Fallon Police Department, at *9 (noting that in connection with an April 2008 arrest the use of a Taser was objectively reasonable in response to a person resisting arrest).  Thus, as of May 2007, it was not clearly established that the use of a Taser against a suspect reasonably believed to pose a danger to the law enforcement officer, who was non-compliant to the law enforcement officer's orders, and who was physically

resistant to being subdued and put under arrest, would constitute a use of excessive force. In fact, the "clearly established" law at the time, given the circumstances facing defendants Brown and Loggia, supports the use of the Taser as being objectively reasonable.  *See*, Clark v. Ware, at *4 (noting that even as of 2012 the "case law related to Taser use is still developing" and as such "may not be sufficiently clear to put an officer on notice that he must limit the use of his Taser in certain circumstances, even though the subject continues to struggle and resist.")

The other issue involves whether the law was "clearly established" regarding whether a minimal level of injury was necessary to demonstrate an excessive use of force.  Upon review of the relevant caselaw, the Court finds that it was not "well-established" as of May 2007 whether excessive force claim required some minimal level of injury.  The state of the law in May 2007 was such that a reasonable officer could have believed that as long as he did not cause more than a *de minimus* injury to an arrestee, the officer would not violate the Fourth Amendment.

In Chambers v. Pennycook, *supra.,* the Eighth Circuit Court of Appeals noted that over the prior fifteen (15) years, "[i]t remains an open question in this circuit whether an excessive force claim requires some minimum level of injury.  Id., at 904.  It reasoned that "a reasonable officer could have believed that as long as he did not cause more than *de minimus* injury to an arrestee, his actions would not run afoul of the Fourth Amendment." A reasonable officer was permitted to assume that legal conclusion when determining how to proceed, and he is entitled to have his conduct judged according to that standard for purposes of qualified immunity."  Id., at 908.  The Court laid the issue to rest by declaring forthwith that even a *de minimus* injury could support a claim of excessive force; but because the incident in question occurred in August 2005 the defendants were entitled to qualified immunity on the excessive force claim.  Id., at 908-09.

Thus, pre-Chambers, it was not clearly established that an officer violated an arrestee's rights, no matter how much force was used, if he caused only *de minimus* injuries.  As of 2009, the Eighth Circuit Court of Appeals had held that in the absence of evidence of long-term effects, the use of a Taser does "not inflict any serious injury" and under the circumstances of the case, the use of the Taser was not excessive.  Cook v. City of Bella Villa, 582 F.3d. 840, 851 (8th Cir. 2009); *see also,* Jones v. Clark, 2012 WL 388699, *11-*12 (D.Minn. Feb. 7, 2012)(listing pre-Chambers cases wherein the courts found that absent evidence of long-term effects, the use of a Taser did not constitute excessive force; and therefore, the use of a Taser during a February 15, 2009 arrest resulting in *de minimus* injuries entitled the defendants to qualified immunity on the issue of excessive force); Luepker v. Taylor, *supra.* (holding that based upon Cook, *supra.*, the use of a Taser during an August 2006 arrest resulting in *de minimus* injuries did not constitute a Fourth Amendment violation for excessive force); Holtgreven v. O'Fallon Police Department, *supra.* (finding that the injuries sustained from a Taser during an April 2008 arrest were "minimal" and defendants' use of the Taser in response to suspect's resisting arrest was not in violation of his Fourth Amendment rights).

It is undisputed that in the instant case, plaintiff was tased during an arrest and based upon the evidence (or lack of evidence), he sustained only *de minimus* injury.  Furthermore, since this incident occurred pre-Chambers, and since legal precedent in this Circuit consistently found that absent evidence of long-term effects, the use of a Taser did not inflict serious injury, defendants Brown and Loggia were entitled to proceed with the belief that the use of a Taser would not run "afoul of the Fourth Amendment."  Thus, defendants Brown and Loggia are entitled to qualified immunity on the plaintiff's excessive force claim.

**Fourteenth Amendment**

31

It is unclear from the plaintiff's complaint and his pleadings in connection with the summary judgment motion as to whether he is also pursing an independent Fourteenth Amendment due process claim.  Plaintiff's false arrest and excessive force claims are both analyzed under the Fourth Amendment; and as found by this Court, the defendants are entitled to summary judgment on both claims because they had probable cause to arrest, the use of the Taser under the circumstances did not constitute excessive force; and/or defendants were entitled to qualified immunity on the excessive force claim. Since these Fourth Amendment claims are analyzed under an objective reasonableness standard, a substantive due process claim cannot be based upon the allegations supporting the plaintiff's false arrest and excessive force claims.  *See*, Smithson v. Aldrich, 235 F.3d. 1058, 1064 (8th Cir. 2000); Reed v. LaNasa, at *5 (D.Minn. April 29, 2011).  Furthermore, plaintiff has failed to plead specific facts to support a procedural dues process claim.  Therefore, to the extent that plaintiff's Counts I and II are based on vague allegations of the deprivation of due process, summary judgment is granted to the defendants.

In light of the above-referenced findings, the Court finds that there are no material issues of fact in dispute, and that as a matter of law, the defendants are entitled to summary judgment on Counts I and II of the plaintiff's complaint.

Dated this  28th day of November, 2012.

_____

UNITED STATES DISTRICT JUDGE